# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ALICE M. FISCHER,

        Plaintiff,

v.                                                                                             Case No. 04-C-134

OAK CREEK-FRANKLIN
JOINT SCHOOL DISTRICT,

        Defendant.

## DECISION AND ORDER

The Plaintiff Alice M. Fischer ("Fischer"), in the above-captioned matter, filed her *pro se* complaint in this Court on February 5, 2004, against her former employer, the Defendant Oak Creek-Franklin Joint School District ("Oak Creek-Franklin"). In her complaint, Fischer alleges that she was subjected to discrimination and harassment because of her sex, sexual orientation, and status as a Native-American. Further, she claims that Oak Creek-Franklin wrongfully terminated her employment and retaliated against her for filing a complaint with the Equal Employment Opportunity Commission (EEOC). On December 9, 2004, Oak Creek-Franklin filed its motion for summary judgment, which the Court now considers.

I.      STANDARD

A court will grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A "material fact" is one which, under the relevant substantive law, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact exists if a reasonable juror could find that the evidence supports a verdict for the nonmoving party. *Id*.

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. When considering the movant's case, the Court should take all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hall v. Bennett*, 379 F.3d 462, 465 (7th Cir. 2004). If the movant meets his burden (by showing an absence of a genuine issue of material fact), the nonmovant may not rest on the pleadings. Instead, the nonmovant must come forward with evidence that there is a genuine issue for trial that would support a reasonable jury verdict on every issue for which he bears the burden of proof at trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *Celotex Corp.*, 477 U.S. at 322-24. If the nonmoving party bears the burden of proof on a matter at trial, and he is unable "to

2

establish the existence of an element essential to [his] case," summary judgment is appropriate. *Celotex*, 477 U.S. at 322-23.

In the present action, Fischer has not responded to Oak Creek-Franklin's motion though she was provided the information and notice to which a *pro se* plaintiff is entitled under this Court's local rules. *See* United States District Court for the Eastern District of Wisconsin, Local Rules, Civil L.R. 56.1. Furthermore, the Court sent Fischer a letter, dated March 22, 2005, requiring her to respond to the pending motion no later than April 11, 2005–a lenient allowance considering Fischer's time to respond had lapsed over two months prior.

Fischer's failure to respond to Oak Creek-Franklin's motion and its proposed findings of fact has decided consequences. Civil Local Rule 56.2(e) of the United States District Court for the Eastern District of Wisconsin states that, when deciding a motion for summary judgment, "the Court must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out." Civil L.R. 56.2(e). Courts are permitted to make and enforce such local rules. *See Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002) ("[w]e have emphasized the importance of local rules and have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment."). Fischer has provided neither a response to Oak Creek-Franklin's motion nor her own proposed findings of fact. Therefore, insofar as Oak Creek-Franklin has complied with those applicable rules related to setting forth

3

proposed findings of fact, the Court will accept those proffered facts as uncontested. Thus, the only salient question for purposes of the pending motion is whether the Defendant is entitled to judgment as a matter of law.

There is yet another consequence of Fischer's failure to diligently prosecute her action. Oak Creek-Franklin argues that Fischer's dilatory behavior and refusal to comply with this Court's orders and rules warrant dismissal of her case for lack of prosecution. District courts have inherent authority to dismiss a case *sua sponte* for a plaintiff's failure to prosecute. *Daniels v. Brennan*, 887 F.2d 783, 785 (7th Cir. 1989). A dismissal for lack of prosecution is appropriate when there is a clear record of delay or contumacious behavior. *Casteel v. Pieschek*, 3 F.3d 1050, 1055 (7th Cir. 1993); *Daniels*, 887 F.2d at 785. No case should be dismissed for failure to prosecute without "explicit warning" of the potential sanction, but there is no requirement that graduated sanctions be imposed before dismissing a case for failure to prosecute. *Ball v. City of Chicago*, 2 F.3d 752, 755-56 (7th Cir. 1993). "Ideally, the Court should consider the frequency and magnitude of the plaintiff's failure to comply with deadlines for the prosecution of the suit, the apportionment of responsibility for those failures between the plaintiff and his counsel, the effect of those failures on the judge's calendar and time, the prejudice if any to the defendant caused by the plaintiff's dilatory conduct, the probable merits of the suit, and the consequences of dismissal for the social objectives of the type of litigation that the suit represents." *Aura Lamp & Lighting Inc. v. Int'l Trading Corp.*, 325 F.3d 903, 908 (7th Cir. 2003) (citation omitted).

4

Oak Creek-Franklin's argument is supported by the history of this action. First, Fischer failed to appear at her own deposition. As a result, Oak Creek-Franklin filed a motion to compel her attendance. Oak Creek-Franklin filed a second motion to compel when Fischer failed to respond to discovery requests. When Fischer finally did respond, she provided answers only to interrogatories and did not satisfy outstanding document production requests. Oak Creek-Franklin still has not received her responses to its requests for production of documents. (*See* Martell Aff. ¶ 5.) Finally, Fischer has failed to respond to the present pending dispositive motion, despite the Court's *sua sponte* extension of the deadline for filing a response.[1] In the same letter in which Fischer received this generous extension, the Court warned her that failure to respond to the pending motion could result in the dismissal of her action or a judgment against her on the merits.

Dismissal for lack of prosecution is appropriate in the instant case. Fischer's conduct forced Oak Creek-Franklin to file two motions to compel. She still has yet to comply with this Court's order related to production of documents. That failure is compounded by the potential impact on her adversary; she cannot refuse production of documents, withhold potential facts, and thereby prevent this litigation from moving forward. Additionally, her

---

[1] The Local Rules for this district strongly suggest that responding to a motion for summary judgment is mandatory. Civil Local Rule 7.1 states that "[o]n motions for summary judgment, the opposing party *must* serve a response answering brief and affidavits or other documents within 30 days of service of the motion; the movant *may* serve a reply brief and, when necessary, affidavits or other documents within 15 days of service of the response brief." United States District Court for the Eastern District of Wisconsin, Local Rules, Civil L.R. 7.1 (emphasis added). While this quoted language may be interpreted as mandating only the time frame within which a response can be filed if a party chooses to do so, the words "must" and "may" suggest that responses are mandatory whereas replies are optional.

5

failure to respond to the instant motion is a violation of this Court's local rules. At this point, the Court's orders and requirements are being met with silence from Fischer. The responsibility for prosecuting this action is hers; she alone is responsible for failing to perform necessary tasks.

Fischer's failure to respond to the instant motion essentially dooms her action. The Seventh Circuit has identified summary judgment as the "'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1111 (7th Cir. 2004) (citations omitted). Insofar as Fischer has chosen not to "put up," she is left with few options. While suits such as Fischer's, which allege discrimination, carry significant social value, the Court is in no position to assess whether Fischer, in fact, was the victim of unlawful discrimination. She has provided only conclusory, unfounded statements. Slapping a legal label on a suit (with no factual support) does not automatically imbue it with that level of social import which will allow the plaintiff to dawdle and stave off dismissal for lack of prosecution.

At this stage, even if Fischer could rebut Oak Creek-Franklin's request for dismissal based on lack of prosecution, her action cannot survive on its merits.

II. FACTS

Fischer began her employment as a security aide with Oak Creek-Franklin, a school district encompassing eight schools, in August of 1996. (Def.'s Proposed Findings of Fact

in Supp. of Mot. for Summ. J. [hereinafter "PFOF"] ¶¶ 1, 2, 4.) Fischer worked in that capacity until accepting a position as a supervisory aide at the Oak Creek East Middle School at the outset of the 1999-2000 academic year.[2] (*Id.* ¶ 5.) This new position required Fischer generally to assist teachers at their direction, supervise students during in-school suspension, and to supervise students during the lunch hour. (*Id.* ¶ 10.) Though Oak Creek-Franklin claimed that this change of position was necessitated by a reduction in force, Fischer filed a charge of discrimination with the Wisconsin Department of Workforce Development Equal Rights Division in August of 1999. (*Id.* ¶¶ 5, 6.) The Department issued a finding of no probable cause and dismissed Fischer's charge. (*Id.* ¶ 6.)

Problems arose during the 2001-2002 school year. Teachers complained that Fischer created disruptions in the classroom. (*Id.* ¶ 12.) Further, she interacted with both staff and students in an inappropriate and immature manner. (*Id.*) Fischer also seemed to have difficulty following her daily work schedule as evidenced by attendance and tardiness problems. (*Id.*) On December 21, 2001, Paul Sigler ("Sigler"), the principal of East Middle School and Fischer's supervisor, met with Fischer and expressed his disappointment over these performance issues. (*Id.* ¶¶ 7, 13.) Fischer responded by claiming that Sigler and Jeffrey Peterson ("Peterson"), the associate principal, were following their own agenda. (*Id.* ¶ 14.) This was not the last time Fischer's behavior at work would be an issue.

---

[2] The affidavits submitted by Oak Creek-Franklin provide different dates for the commencement of Fischer's employment. The Affidavit of Paul Vance states that she accepted the position of supervisory aide at Oak Creek East Middle School at the beginning of the 1999-2000 academic year. (Vance Aff. ¶ 4.) The Affidavit of Paul Sigler states that she accepted this position at the beginning of the 2000-2001 school year. (Sigler Aff. ¶ 4.) The Court uses the date as propounded in Oak Creek-Franklin's Proposed Findings of Fact.

7

In February of 2002, Fischer failed to adhere to guidelines for supervising students in a special in-school suspension room. (*Id*. ¶ 15.) Fischer apparently was physically interacting with the children including punching students and allowing one student to have a "kick me" sign placed on his back multiple times. (*Id*.) Based on this conduct, Sigler informed Fischer that her performance was unsatisfactory and that he had seen little improvement in her work. (*Id*. ¶ 16.) On April 18, 2002, he again raised with her the issue of her poor attendance and her absences on Mondays and Fridays. (*Id*. ¶ 17.)

Presumably in an attempt to curtail the problems of the preceding school year, a meeting was scheduled for September 4, 2002. (*Id*. ¶ 20.) That meeting was attended by Sigler, Peterson, and Fischer as well as a union representative and a personal representative of Fischer's. (*Id*.) At the meeting, seven performance points were identified, which clarified Oak Creek-Franklin's expectations for Fischer including compliance with her work schedule, her behavior in the classroom, and appropriate interaction with students. (*Id*.) Fischer agreed to adhere to these guidelines. (*Id*. ¶ 22.) Despite this meeting and the issues discussed, more problems followed.

Fischer received three (or, depending on how they are tallied, four) suspensions over the period of time between the middle of October and the middle of December 2002. First, on October 11, 2002, Fischer was suspended for one day without pay as a result of sleeping during a class instead of assisting the classroom teacher, calling a student a "creep," and failing to check her mailbox. (*Id*. ¶ 23.) Subsequent to this occurrence, Fischer was warned

8

that future incidents could result in further disciplinary action. (*Id*. ¶ 24.) Next, Oak Creek-Franklin suspended Fischer for one day on November 18, 2002, based on her failure to properly discharge her supervisory duties during the lunch hour on November 14, 2002. (*Id*. ¶ 27.) Specifically, Fischer had engaged in inappropriate activities including chasing students, marking them with a highlighter marker, and throwing markers. (*Id*.) During the course of this rough-housing, Fischer locked herself in the in-school suspension room. (*Id*.) She acknowledged the inappropriateness of her behavior and Oak Creek-Franklin, in the person of Sigler, again warned her that future infractions would lead to continued disciplinary measures. (*Id*. ¶¶ 27, 28.) A third suspension followed from Fischer's failure to follow her daily work schedule on December 12, 2002. (*Id*. ¶ 30.) After this incident, Oak Creek-Franklin stated what, at this point, should have been well understood by Fischer: future problems would be met with disciplinary action. (*Id*. ¶ 31.) Oak Creek-Franklin contends that all of the above incidents occurred in violation of the guidelines established during the September 4, 2002 meeting. (*Id*. ¶¶ 26, 29, 32.)

Though it may be of little relevance, Fischer was not necessarily receptive to the concerns and reprimands of her employer. (*Id*. ¶¶ 14, 25, 33, 34.) In fact, Fischer's reaction to her December 12, 2002 suspension resulted in another suspension–this being the fourth– for insubordination. (*Id*. ¶ 34.) Apparently, after being told that she was to be disciplined for not adhering to her work schedule, Fischer spent time in the hall on her cell phone talking to a union representative. During the time she was on the phone, she was scheduled to be

9

working in a computer classroom. (Sigler Aff. ¶ 17.) When Sigler asked her about her phone discussion during work hours, Fischer apparently became confrontational and walked out of Sigler's office without speaking to him. (*Id*. ¶ 34.) And, of course, this additional suspension for insubordination was accompanied by a warning that any future infractions or insubordination would result in disciplinary action, up to and including termination. (*Id*. ¶ 35.)

More problems followed. On March 13, 2003, Fischer wore sweat pants at work, in violation of applicable dress standards. (*Id*. ¶ 36.) Fischer called into work on March 19th and March 20th of 2003 claiming that she was sick, though Oak Creek-Franklin was aware that she had been arrested for a driving offense on March 20, 2003. (*Id*. ¶ 38.)[3] On April 2, 2003, Fischer provided answers to a student taking a quiz. (*Id*. ¶ 40.) On April 8, 2003, she disrupted a class discussion by carrying on a separate conversation with a student in the back of the classroom. (*Id*. ¶ 41.) On April 9, 2003, Fischer's behavior disrupted a classroom presentation; apparently she was clowning around with other students and throwing pieces of paper at them. (*Id*. ¶ 42.) During a fire drill on April 10, 2003, Fischer pushed students out of her way, attempted to trip some of them, "high-fived" and shook hands with others, and made smart-alecky comments (e.g., "Where's Toto?"). (*Id*. ¶ 43.)

---

[3] The Court will not draw any inferences against Fischer regarding the veracity of her explanation for failing to come to work on the 19th and 20th of March, 2003. The police reports provided by Oak Creek-Franklin do not rule out Fischer's claim that she had dental work performed on the day in question.

10

Finally, on April 11, 2003, Fischer's employment was terminated. (*Id*. ¶ 44.)[4]

On June 10, 2003, Fischer filed a charge of discrimination with the Equal Employment Opportunity Commission. (*Id*. ¶ 52.)

III. ANALYSIS

Title VII prevents employers from failing or refusing to hire or discharge individuals, or otherwise discriminate against them with respect to their "compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Similarly, employers may not retaliate against employees who oppose unlawful practices. 42 U.S.C. § 2000e-3(a).

As Oak Creek-Franklin correctly points out, Title VII plaintiffs are generally prohibited from bringing claims in federal court that were not contained in their EEOC charges. *See Harper v. Godfrey Co.*, 45 F.3d 143, 147-48 (7th Cir. 1995). This requirement serves a two-fold purpose. First, the charge requirement gives employers notice of the actions about which the employee complains and, second, it allows the EEOC and the employer an opportunity to resolve the dispute before recourse is sought in the court system. *See Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). This is not to say that every claim a plaintiff brings in federal court must be explicitly raised in an EEOC charge. A plaintiff may proceed on a claim not set forth in an EEOC complaint if the claim is like or

---

[4] Fischer's Union pursued a grievance on her behalf. That grievance was dismissed with prejudice pursuant to a voluntary settlement agreement in which Fischer's termination was converted to a resignation. (*See* Vance Aff. ¶ 19.) This settlement might convert Fischer's claim of wrongful termination into one for constructive discharge. The Court, however, need not pursue this line of thinking because Fischer is silent on this issue as on others.

11

reasonably related to the EEOC charges, and the claim in the complaint reasonably could have been expected to grow out of the EEOC's investigation of the originally filed charge. *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002) (citing *Harper*, 45 F.3d at 148). At the very least, the EEOC charge should describe the same actions and the same individuals that form the basis of the federal complaint. *Id*.

Fischer's EEOC Charge of Discrimination, attached as Exhibit 14 to the Affidavit of Troy Martell, states, "I believe that I have been discriminated against . . . due to my race." In the box with the description "Discrimination Based On," only the "race" box is checked. The EEOC charge contains factual allegations regarding Fischer's April 10th suspension, her April 14th termination, and certain of the incidents detailed in the facts section of this decision.

Fischer's EEOC charge identifies two sets of facts and only one legal theory of discrimination. However, "[w]hen an EEOC charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent complaint are not reasonably related to them unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge." *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.2d 520, 527 (7th Cir. 2003) (quoting *Cheek*, 31 F.3d at 503). Even reading the EEOC charge generously, one thing is certain: the EEOC charge does not make any reference to retaliation. Nothing in the EEOC charge references Fischer's filing of a charge or complaint (such as the complaint she filed in 1999 with the Wisconsin Department of Workforce Development

12

Equal Rights Division) that might have caused Oak Creek-Franklin to respond with retaliation. (*See Renaissance Hotel Operating Co.*, 307 F.3d at 550 (finding retaliation claim outside of scope of EEOC charge because charge "makes no mention of a complaint of discrimination, to whom the complaint was made or what adverse action allegedly resulted from the complaint.")). Fischer's retaliation claim is clearly outside the scope of her EEOC charge and is dismissed accordingly.

Oak Creek-Franklin makes a solid argument that Fischer's claims related to sexual discrimination and harassment likewise should be foreclosed. Strongest in its favor is the fact that Fischer checked only the "race" box when identifying the type of discrimination for which she sought redress. Race is also the only type of discrimination identified in that portion of the charge in which a complainant may write her own comments.

The Court, however, does not find Fischer's failure to check the box that identifies a claim of discrimination based on sex to be dispositive. *See Ajayi*, 336 F.3d at 528 (stating that court would not rest its decision regarding the scope of the EEOC charge solely "on an omitted check mark"). Of course, if the Court found that the factual allegations in the EEOC charge fairly raised claims of both sex and race discrimination, Fischer would have no difficulty pressing her claims in this forum. *See Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 169 (7th Cir. 1976) (holding that plaintiff who checked race but not sex discrimination box on EEOC form could still maintain an action for sex discrimination

13

because the factual allegations in the EEOC charge supported claims of both types of discrimination).

Regardless, the Court will assume, *arguendo*, that Fischer's claims of sex discrimination were contained in her EEOC charge. The Court now turns to an examination of the substantive merits of Fischer's claims.

To proceed on her claims, Fischer may utilize either the "direct" or "indirect" method of showing discrimination. *See Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998). Under the "direct" method, Fischer must bring forth either circumstantial or direct evidence showing that Oak Creek-Franklin's decision to terminate her employment (or whatever adverse actions she may claim) was motivated by impermissible considerations of her race or sex. *Id*. Alternatively, she may proceed under the "indirect" method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Under the *McDonnell Douglas* framework, once Fischer has established a *prima facie* case of discrimination, the burden then shifts to Oak Creek-Franklin to provide a legitimate and nondiscriminatory reason for its actions. *Id*. If Oak Creek-Franklin carries that burden, Fischer must then attempt to show that its proffered reasons were pretextual. *See Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1169 (7th Cir. 1998) (citations omitted).

Fischer has proffered no facts constituting direct evidence of sex or race discrimination, circumstantial or otherwise. Therefore, the Court proceeds as if she were invoking the *McDonnell Douglas* indirect method of demonstrating discrimination. In order

14

to establish a *prima facie* case of discrimination under this framework, Fischer must show that: (1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) at least one similarly situated employee, not in the protected class, was treated more favorably. *See Gordon v. United Airlines, Inc.*, 246 F.3d 878, 885-86 (7th Cir. 2001).

Oak Creek-Franklin concedes that Fischer satisfies the first and third prongs of this analysis. However, it contends that she cannot show that she was performing her work duties satisfactorily, or that a similarly situated employee was treated more favorably. The Court agrees.

Fischer has failed to raise any genuine issue of material fact regarding what can only be viewed as her dissatisfactory job performance. The facts in this case, as described above, show that Oak Creek-Franklin attempted to correct what it deemed inappropriate behavior on Fischer's part. Oak Creek-Franklin has marshaled facts in support of its motion demonstrating that Fischer's job performance was unsatisfactory. The Court need probe no further; it will not play the role of Fischer's advocate and attempt to discredit Oak Creek-Franklin's facts and explanations thereof. Fischer has chosen not to respond to Oak Creek-Franklin's facts and explanations; she must bear the consequences of her choice.

In a similar vein, Fischer has not pointed to a similarly situated employee who was treated more favorably than she. Mere off-hand and conclusory statements such as those found in her deposition will not fend off dismissal under summary judgment. Fischer has

15

failed to establish a *prima facie* case of discrimination under the *McDonnell Douglas* framework.

Oak Creek-Franklin has also attempted to dispose of any hostile work environment claims that Fischer may have intended. (Such a claim may be discernible from her complaint.) To establish a claim of hostile work environment, Fischer must show that (1) she was subject to unwelcome harassment; (2) the harassment was based on her sex or race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's environment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000).

Even if Fischer could rely solely on her complaint to defeat summary judgment, her complaint contains largely conclusory comments and few, if any facts, that might support a claim of hostile work environment. Regardless, the Court is at a loss to explain what constitutes the "unwelcome harassment"or "hostile environment"–beyond conclusory legal categories–for which Fischer seeks redress. The facts informing Oak Creek-Franklin's motion are devoid of any information that might suggest a hostile or harassing environment. Presumably, Fischer is upset because she feels that she was not treated properly. However, she has failed to come forward with evidence that there is a genuine issue for trial that would support a reasonable jury verdict on every issue for which she bears the burden of proof.

16

Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *Celotex Corp.*, 477 U.S. at 322-24.[5]

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**

Oak Creek-Franklin's Motion for Summary Judgment (Docket No. 30) is **GRANTED**.

The Clerk of Court is directed to **DISMISS** the present action with prejudice.

Dated at Milwaukee, Wisconsin this 18th day of April, 2005.

**BY THE COURT**

s/ Rudolph T. Randa
**Hon. Rudolph T. Randa**
**Chief Judge**

---

[5] Oak Creek-Franklin, in its memorandum supporting its dispositive motion, manufactures arguments in an attempt to address what it thinks may be Fischer's claims. Thus, in order to present a thorough, meaningful brief, it assumes that by "harassment," Fischer means Oak Creek-Franklin's disciplinary actions against her. This is as good an assumption as any. The Court has looked at Oak Creek-Franklin's uncontested facts and finds no evidence whatsoever that might support claims of harassment or discrimination. Neither this Court nor Oak Creek-Franklin is obligated to make arguments for Fischer or to create issues of material fact. Neither Fischer's complaint nor her answers to Oak Creek-Franklin's interrogatories raise a genuine issue of material fact. Those documents are largely comprised of vague suggestions and broad, conclusory statements.

17